**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

_____X
In re:                              :
                                    :
Derby Development Corp.,            :         Chapter 11
                                    :         Case No.: 10-50259
         Debtor.                    :
_____X
The Community Preservation Corporation, :
                                    :
         Plaintiff,                 :
                                    :
         –vs–                       :         Adv. Pro. No.: 11-5036
                                    :
Mario Paniccia;                     :
Viking Acquisitions, LLC,           :
                                    :
         Defendants.                :
_____X

*Appearances:*

| | |
|---|---|
| Patrick M. Birney, Esq.<br>Martin A. Onorato, Esq.<br>Elizabeth K. Wright, Esq.<br>Robinson & Cole, LLP<br>280 Trumbull Street<br>Hartford, CT | For Plaintiff Community Preservation Corporation |
| Jane I. Milas, Esq.<br>Garcia & Milas<br>44 Trumbull Street<br>New Haven, CT | For Defendant Mario Paniccia |
| Anthony J. LaBella, Esq.<br>Ury & Moskow, LLC<br>883 Black Rock Turnpike<br>Fairfield, CT | For Defendant Viking Acquisitions, LLC |

**MEMORANDUM OF DECISION ON CREDITOR CPC'S COMPLAINT**

The plaintiff, Community Preservation Corporation (CPC), as a holder of a secured claim in this Chapter 11 case, commenced this adversary proceeding against Mario Paniccia, an architect, and Viking Acquisition, LLC, an alleged transferee of a

mechanic's lien. It was brought to challenge the validity of that lien. For the reasons that follow, judgment shall enter in favor of CPC. That result will apply in the confirmation process of CPC's Third Amended Plan which provides in Class Two for the treatment of the subject mechanic's lien.

## Background

A detailed history of this case was included in *In re Derby Development Corp.*, No. 10-50259, 2012 WL 2501064, *1-3, slip op. (Bankr. D. Conn. June 27, 2012) (hereafter, "The § 1126(e) Ruling"), familiarity with which is assumed. For ease of reference, the salient facts in that Ruling are repeated here.

Debtor Derby Development, Corp. ("Derby") is the owner of a 15-unit apartment complex in Derby, Connecticut ("Property"). David Paniccia ("David") is the owner of Derby. The defendant, Mario Paniccia ("Mario"), is David's uncle and an architect who claims he provided pre-bankruptcy architectural services to Derby. Mario also claims his fee and expenses for that service were collateralized by a mechanic's lien ("Mechanic's Lien"). (*See* Oct. 3, 2012 Hr'g Tr. 30:9-15 (ECF No. 155).)

On August 3, 2009, Derby commenced this Chapter 11 bankruptcy case. On February 5, 2010, CPC and Mario were listed on Derby's Schedule D - Creditors Holding Secured Claims. (*See* Case No. 10-50259, ECF. No. 19 at 8.)

Derby proposed several plans of reorganization. Class 2 in each plan classified Mario as the holder of a secured claim, *i.e.*, the Mechanic's Lien, and designated the class as impaired. See §§1122(a), 1123(a). At a May 15, 2011 pre-confirmation status

conference, CPC argued that Mario's vote in Class 2, which accepted Derby's then-proposed plan, should not be counted because he was an insider. *See* § 101(31)(A). Accordingly, Derby's plan could not be confirmed as a matter of law because, although it included classes of holders of impaired claims, there was no acceptance of the plan by any impaired class. *See* § 1129(a)(10). Derby responded that Mario had transferred the Mechanic's Lien to the defendant Viking Acquisitions, LLC ("Viking"). This was the first notice of the alleged transfer to Viking and prompted CPC to file a motion under § 1126(e)[1] seeking a determination that Viking's vote should be disregarded. *See*, *infra*, note 2. The court granted CPC's motion.[2] As a consequence, Derby's plan was unconfirmable; the only plan before the court is CPC's Third Amended Plan ("CPC

---

[1] Section 1126(e) provides:

> On request of a party in interest, and after notice and a hearing, the court may designate any entity whose acceptance or rejection of such plan was not in good faith, or was not solicited or procured in good faith or in accordance with the provisions of this title.

11 U.S.C. § 1126(e).

[2] It is noteworthy that, although not a basis of the analysis and conclusions reached here, The § 1126(e) Ruling stated:

> [t]he establishment of Viking and its purchase of Mario's Mechanic's Lien was a sham intended to facilitate the confirmation of the Debtor's 1st Plan over CPC's objections. To be more specific, Viking . . . agreed to purchase the Mechanic's Lien and vote in favor of the Debtor's 1st Plan, free from Mario's insider status, and thereby supply a non-insider vote by an impaired class to satisfy § 1129(a)(10).

The § 1126(e) Ruling at 8-9. This finding foreshadowed the pattern of disingenuousness displayed by Mario in this Action. *See, infra*, at 6-7.

Plan"). (*See* Case No.10-50259, ECF No. 329).

CPC's Plan states that "Class 2 consists of [the] Mechanic's Lien now or formerly held by Mario Paniccia, an Insider of [Derby] or an Affiliate of [Derby], and which was originally scheduled by [Derby] in the amount of no more than $160,000.00. The Claim comprising Class 2 is the subject of Adversary Proceeding Number 11-050[3]6." (CPC Plan, § 5.2(a), p.15.) Therefore, the outcome of this adversary proceeding (hereafter, "Action") will be applicable to CPC's treatment of Class 2 and, ultimately, to the confirmability of CPC's Plan.

## DISCUSSION[3]

On July 26, 2011, Viking filed an answer to CPC's Amended Complaint. (*See* ECF No. 46.) Thereafter, its attorney withdrew his appearance, and Viking has not offered any defense in this Action. (*See* "Order Granting Motion to Withdraw as Counsel for Defendant Viking Acquisitions, LLC", ECF No. 144 (dated Sept. 12, 12).) As a result, CPC moved pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, made applicable to this Action by to Rule 7055 of the Federal Rules of Bankruptcy Procedure, for a clerk's entry of default. (*See* ECF No. 147.) That motion was granted

---

[3] Since, as noted, judgment shall enter in favor of CPC on its first count, *i.e.*, a challenge to the validity of the Mechanic's Lien, an analysis of its second count, *i.e.*, an objection to claim, is not necessary. Nonetheless, even if a claim for Mario's Mechanic's Lien had been filed, it would not be allowed because of the court's finding that Mario's testimony is incredible, *see, infra*, at 6, and Mario would be unable to overcome CPC's objection.

on October 16, 2012. Mario, therefore, is the only defendant.[4]

Parenthetically, the court notes the following undisputed facts received into the evidence of this Action support CPC's challenge to Mario's claim that he is the current holder of the Mechanic's Lien with standing to defend its validity:

(1) Pursuant to the May 18, 2011 "Sale Agreement" between Mario and Viking (*see* Trial Exh. 7), Mario had "the right to retake the Asset (Mechanic Lien) . . .";

(2) Viking defaulted by not paying two consecutive payments in accordance with the Sale Agreement and corresponding "Time Promissory Note" (*See* Trial Exh. 8; *see also* The § 1126(e) Rule at 9);

(3) Mario relied upon Viking's September 24, 2012 "Release of Assignment of Mechanic's Lien" ("Release") to support his assertion that, as a result of Viking's default, he is once again the holder of the Mechanic's Lien. (*See* Trial Exh. 9.);

(4) However, the Release clearly states it was "voluntarily and knowingly execute[d] . . . *with the express intention of effecting the extinguishment of obligations created by or arising out of the Assignment*" (*id.* (emphasis added)).

There was no mention or implication that the Release is also a mechanism to re-assign the Mechanic's Lien to Mario. But, even if Mario may be considered a bona fide holder of the Mechanic's Lien who, therefore, has standing to seek its allowance as a secured claim, CPC argues that its challenge should be sustained on two bases: Mario did not comply with the statutory requirements for the creation of a mechanic's lien, and

---

[4] In conjunction with the confirmation hearing on the CPC Plan, the trial in this Action began on August 1, 2012. It continued on October 3, 4, and 11, 2012, and concluded on October 16, 2012.

alternatively, even if a mechanic's lien was actually created, Mario failed to maintain its perfection.  As the plan proponent challenging a claim, CPC has the burden of proving that the Mechanic's Lien should not be treated as an allowed secured claim.  *See* 11 U.S.C. § 502(a); *Reilly v. Novak (In re Reilly),* 245 B.R. 768, 773 (2d Cir. B.A.P. 2000); *In re White*, 165 B.R. 825, 829 (Bankr. D. Conn. 1994).

Creation of the Mechanic's Lien

At the outset, the court observes that its determination regarding the creation of the Mechanic's Lien is based, in large part, on CPC's challenge to Mario's credibility. *See Reilly*, 245 B.R. at 773, *aff'd without opinion* 242 F.3d 367 (2d Cir. 2000) ("The Bankruptcy Court, as the trier of fact, is in the best position to determine the credibility of witnesses and their testimony.").  Having observed Mario and assessed his testimony, the court finds that in several material instances, Mario's testimony was not credible, and that finding supports the conclusion that CPC's challenge to the validity of the Mechanic's Lien is successful.  For example, when questioned by CPC's counsel, Mario responded that he could not remember,[5] he was confused, and he could not understand the questions.[6]  In response to other questions, Mario provided vague and

---

[5] *See, e.g.*, Oct. 4, 2012 Hr'g Tr. at 54:10-55:11.

[6] *See, e.g.*, Oct. 4, 2012 Hr'g Tr. at 7:25-8:5, 53:19-22, 55:12-14; Oct. 11, 2012 Hr'g Tr. at 71:5-24.

evasive answers,[7] and he was often argumentative and confrontational.[8],[9] In contrast, when questioned by his counsel, Mario demonstrated quick and comprehensive recall, providing precise and fully informed answers.

Against that backdrop, the court turns to Connecticut's mechanic's lien statute, *see generally Butner v. United States*, 440 U.S. 48 (1979):

> A mechanic's lien is not valid unless the person performing the services or furnishing the materials (1) within ninety days after he has ceased to do so, lodges with the town clerk of the town in which the building, lot or plot of land is situated a certificate in writing, which shall be recorded by the town clerk with deeds of land, (A) describing the premises, the amount claimed as a lien thereon, the name or names of the person against whom the lien is being filed and *the date of the commencement of the performance of services* . . ., (B) stating that the amount claimed is justly due . . ., and (C) *subscribed and sworn to by the claimant*, *and* (2) not later than thirty days after lodging the certificate, *serves a true and attested copy of the certificate upon the owner* of the building, lot or plot of land in the same manner as is proved for the service of the notice in section 49-35.

Conn. Gen. Stat. § 49-34 (2006) (emphasis added). It is further emphasized that the Connecticut Supreme Court has held that "complete compliance with the statutory requirements" of the state's mechanic's lien statute is required. *Stone-Krete Constr., Inc. v. Eder*, 280 Conn. 672, 682, 911 A.2d 300, 306 (2006) (further citations omitted). Any one of the following three bases is sufficient to support the conclusion that Mario's

---

[7] *See, e.g.*, Oct. 4, 2012 Hr'g Tr. at 53:23-54:5, 53:13-18.

[8] *See, e.g.*, Oct. 4, 2012 Hr'g Tr. at 67:6-12.

[9] Indeed, on eight separate occasions, the court instructed Mario to answer questions and refrain from making speeches. *See, e.g.*, Oct. 3, 2012 Hr'g Tr. at 44:3-8, 45:10-19, 48:15-16, 49:3-13, 51:4-13, 64:23-65:11, 86:21-25, 88:13-18.

Mechanic's Lien was not valid.

    A.    *Inconsistent testimony regarding commencement date of services*

Notwithstanding *Stone-Krete Constr., Inc. v. Eder*, *id.*, Mario's testimony downplayed the significance of the dates on his drawings and admitted that the dates he placed on his drawings did not reflect when he actually did the work. (*See* Oct. 11, 2012 Hr'g Tr. at 83:19–25; *see also id.* at 72:13-73:1; 79:3–83:18.) According to the text of Mechanic's Lien, Mario began "furnish[ing] materials and render[ing] services" to Derby "on or about *October 13, 2008* and ceased furnishing such materials and rendering such services on July 30, 2009". (Tr. Exh. A (emphasis added).) This contradicts Mario's testimony that "[t]he actual work was started in August [2008]." (Oct. 4, 2012 Hr'g Tr. 76:12; *see also id.* at 35:17-23 ("most of [his] work was being done from August [2008] through January"); 75:13-76:17.) In fact, Mario admitted that the start date in the Mechanic's Lien is not correct. (*See id.* at 77-18: 78:6.) Moreover, the value of the documents Mario provided in support of the Mechanic's Lien, especially his architectural drawings, is questionable since, although he physically prepared them, he cannot corroborate when the documents were actually created. It is most significant that despite being compelled by this court's July 18, 2012 Order to produce electronically stored information ("ESI")[10] that would contain metadata regarding creation dates, Mario failed to do so. That defiance is compounded by Mario's explanation as to why he could not comply with the court's Order. Mario claims to have

---

[10] *See* July 18, 2012 "Order on Motion to Compel Production of Electronically Stored Information", Main Case No. 10-50259, ECF No. 265 (compelling Mario to produce "all electronically stored information in his possession, custody or control relating to architectural drawings pertaining to the" Property).

disposed of his laptop computer in November 2009 at a Circuit City store.  (*See* Oct. 11, 2012 Hr'g Tr. at 140:4–25.)  However, ten months earlier, in January 2009, a bankruptcy court in the Easter District of Virginia entered an order authorizing the liquidation of all Circuit City assets.  (*Id.* at 141:3–143:24.)

    B.    *Noncompliance with the "oath" requirement*

The Connecticut Supreme Court has stated:

> We conclude that the "subscribed and sworn to" provision [of C.G.S. § 49-34(1)(C)] requires that a claimant executing a mechanic's lien sign the lien at the end and take part in an oath ceremony in which the claimant swears to the truth of the facts set forth in the lien, and, further, that there be evidence in the lien, such as a jurat, confirming the administration of the oath by a notary public or a commissioner of the Superior Court.

*Stone-Krete Constr.*, 280 Conn. at 679, 911 A.2d at 305.  Here, Mario signed the Mechanic's Lien at the end, which was immediately followed by a jurat stating, *inter alia*, that Mario "personally appeared" and "executed the [Mechanic's Lien] for the purposes therein contained" and "made solemn oath that the facts stated therein are true . . ." before a notary public, as verified by the notary public's signature.  (Trial Exh. A, Mechanic's Lien at 2.)  *See also Stone-Krete Constr.*, 280 Conn. at 679, 911 A.2d at 305 (instructing that "a verification is similar to an affidavit in that it signified that a person has sworn to the truth of a document's contents", whereas "an acknowledgment signifies that a person voluntarily has signed a document").  However, Mario's testimony eviscerates the veracity of the jurat because he testified that there was merely a perfunctory execution of the Mechanic's Lien by Mario followed by the notary public's acknowledgment of that execution, notwithstanding the language of the jurat.

(*See* Oct. 4, 2012 Tr. Hr'g 74:23–75:10; ECF No. 156 (emphasis added).)

    C.    *Lack of proof of service of Mechanic's Lien*

Section 49-35 of the Connecticut General Statutes requires that service be made "by any indifferent person, state marshal or other proper officer" either by personal service, registered or certified mail, or publication. Conn. Gen. Stat. § 49-35 (2006). Further, "[t]he notice, with the return of the person who served it endorsed thereon, shall be returned to the original maker of the notice not later than thirty days after the filing of the certificate pursuant to section 49-34." *Id.* However, other than Mario's uncorroborated testimony (*see* Oct. 4, 2012 Hr'g Tr. at 73:10-16), there is no evidence of service of the Mechanic's Lien in accordance with the statutory requirement.

Maintaining Perfection of the Mechanic's Lien

Even if the above procedural requirements had been satisfied and the Mechanic's Lien had been created, CPC's second argument as to why the Mechanic's Lien is not valid is persuasive. Connecticut law requires that after a mechanic's lien has been perfected by recording, it will "not continue in force" for more than one year from the date of perfection *unless* the lienholder commences an action to foreclose the lien and records a lis pendens on the land records. *See* Conn. Gen. Stat. §49-39.[11]

---

[11] Connecticut General Statute § 49-39 provides in relevant part:

> A mechanic's lien shall not continue in force for a longer period than one year after the lien has been perfected, unless the party claiming the lien commences an action to foreclose it . . . , and records a notice of lis pendens in evidence thereof on the land records of the town in which the lien is recorded within one year from the date the lien

At the outset of this analysis, it is noted that the automatic stay does not preclude an act to perfect a lien. Rather, § 362(b)(3) of the Bankruptcy Code permits post-petition maintenance or continuance of perfection of liens pursuant to § 546(b),[12] thereby enabling such liens to maintain priority over the interest of the bankruptcy estate. To do so, one must give notice as prescribed by § 546(b)(2) within the time fixed by applicable law which, in this instance, is the Connecticut mechanic's lien statute.

Here, Mario would have had to take action to maintain the Mechanics Lien within one year of August 3, 2009. He failed to do so. Indeed, he admitted that as of August 3, 2010, he had not commenced an action to foreclose the Mechanic's Lien and record a notice of lis pendens. (*See* Mario's Answer at ¶21 (ECF No. 44).) Moreover, CPC elicited testimony from Mario that he did not cause the requisite § 546 notice to be given.[13] (*See* Oct. 11, 2012 Hr'g Tr. at 116:7-118-5). Consequently, in accordance with

---

> was recorded . . . . *Each such lien, after the expiration of the one-year period . . ., without action commenced and notice thereof filed as aforesaid, shall be invalid and discharged as a matter of law.*

Conn. Gen. Stat. § 49-39 (2006) (emphasis added).

[12] Specifically, § 546(b)(1)(B) "provides for t*he maintenance or continuance of perfection* of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuance." (Emphasis added.)

[13] Mario would have had to provide § 546 notice within one year of August 3, 2009, in order to continue the perfection of the Mechanic's Lien. However, the court's judicial notice of the docket in Case No. 10-50259 confirms that no § 546 notice was filed in Derby's case. (*See* Oct. 11, 2012 Hr'g Tr. 119:16-121:4 (court ruling that it would take judicial notice of the docket from the commencement of the bankruptcy case to the filing of this Action to determine whether a § 546 notice was filed).)

§ 49-39 of the Connecticut General Statutes, the Mechanic's Lien is "invalid and discharged as a matter of law." Conn. Gen. Stat. § 49-39 (2006).

## Conclusion

Accordingly, IT IS ORDERED that judgment shall enter in CPC's favor.

IT IS FURTHER ORDERED that the CPC Plan shall be scheduled for a confirmation hearing on April 23, 2013 at 10:00 a.m. The Clerk's Office is directed to issue the required notice of hearing.

Dated this 10th day of April 2013 in Bridgeport, Connecticut.

BY: /s/ Alan H. S. Shiff

Alan H. S. Shiff
United States Bankruptcy Judge